UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PROGRESSIVE EXPRESS INSURANCE
COMPANY, an Ohio corporation,

    *Plaintiff,*

vs.

MASA & P LOGISTICS INC., a Florida
Profit Corporation; JESUS VAZQUEZ as
the Personal Representative of the Estate of
Daniel Jaramillo Vazquez, deceased;
LOWE'S HOME IMPROVEMENT, LLC,
a Foreign Limited Liability Company;
SPIRIT LOGISTICS NETWORK, INC., a
Foreign Profit Corporation; DIAZ-ABAD
TRUCKING LLC, a (dissolved) Florida
Limited Liability Company; and GEORGE
PROENZA MOJENA,

    *Defendants.*
_____/

Case No.:

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, PROGRESSIVE EXPRESS INSURANCE COMPANY, on Ohio corporation ("Progressive"), by and through its undersigned attorney, files this Amended Complaint against Defendants, MASA & P LOGISTICS INC., a Florida Profit Corporation; JESUS VAZQUEZ as the Personal Representative of the Estate of Daniel Jaramillo Vazquez, deceased; LOWE'S HOME IMPROVEMENT, LLC, a Foreign Limited Liability Company; SPIRIT LOGISTICS NETWORK, INC., a Foreign Profit Corporation; DIAZ-ABAD TRUCKING LLC, a (dissolved) Florida Limited Liability Company; and GEORGE PROENZA MOJENA, and states:

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

**PARTIES, JURISDICTION AND VENUE**

2. At all times material hereto, PROGRESSIVE was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

3. At all times material hereto, MASA & P LOGISTICS INC. ("Masa & P") was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida, but conducting business in Putnam County, Florida.

4. At all times material hereto, the decedent, Daniel Jaramillo Vazquez was a resident and citizen of Putnum County, Florida. His Estate has been established in the Courts of Putnum County, Florida and his Personal Representative, Jesus Vazquez, was a resident and citizen of Putnum County, Florida.

5. At all times material hereto, LOWE'S HOME CENTERS LLC ("Lowe's), is a foreign limited liability company organized and existing under the laws of the State of North Carolina, had six members, Gary White, Beth MacDonald, Ryan Grimsland, David Green, Richard Goodman, and Dan Griggs. Each of these six members were residents and citizens of Mooresville, North Carolina. Lowe's was licensed to conduct, and is actively conducting, business in Putnam County, Florida.

6. At all times material hereto, SPIRIT LOGISTICS NETWORK, INC. ("Spirit Logistics") was a corporation organized and existing under the laws of the New Jersey with its principal place of business in New Providence, New Jersey, but

licensed to do, and conducting, business in the State of Florida.

7. At all times material hereto, DIAZ-ABAD TRUCKING LLC ("Diaz-Abad Trucking"), was a Florida limited liability company organized and existing under the laws of the State of Florida, of which Carlos J. Diaz Fonseca and Jhonar C. Diaz Castillo were the managing members and both were residents and citizens of Lee County, Florida.

8. At all times material hereto, GEORGE PROENZA MOJENA ("Mojena") was a resident and citizen of Duval County, Florida.

9. This court has subject matter over the instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists as between Progressive, on the one hand, and Defendants, on the other, and the amount in controversy exceeds $75,000.00.[1]

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the insurance policy at issue was entered into in this district, and several defendants reside in this district.

## THE RELATIONSHIP BETWEEN PARTIES

11. Upon information and belief, the following relationships existed between the parties to this declaratory action at all times relevant herein:

12. Lowe's had a contracted agreement with Spirit Logistics wherein Spirit

---

[1] This arises out of a wrongful death action which caused the death of Daniel Jaramillo Vazquez and the Estate is seeking damages well in excess of the $75,000.00 threshold for this Court.

Logistics agreed to make and/or broker deliveries for Lowe's (the "Lowe's-Spirit Agreement"). Progressive does not have a copy of the Lowe's-Spirit Agreement but will request the same during discovery.

13. Spirit Logistics then contracted with Masa & P to make deliveries in furtherance of the Lowe's-Spirit Agreement (the "Spirit-Masa Agreement"). A copy of the Spirit-Masa Agreement is attached herein as Exhibit "A".

14. At all times relevant, Masa & P held intrastate motor carrier authority in its own name pursuant to USDOT 3729825.[2]

15. Masa then had a verbal agreement with Diaz-Abad Trucking and Mojena wherein Diaz-Abad Trucking/Mojena would complete Lowe's deliveries contracted to Masa by Spirit Logistics.

16. At all times relevant, Diaz-Abad Trucking held intrastate motor carrier authority in its own name pursuant to USDOT 3515248.

## UNDERLYING ACCIDENT FACTS

17. Upon information and belief, Lowe's contracted with Spirit Logistics, pursuant to the Lowe's-Spirit Agreement, to move a local load of goods from its store in Florida to a consumer's house in Florida on August 18, 2022 ("the Shipment").

18. Spirit Logistics then contracted with Masa to complete the Shipment

---

[2] Upon information and belief, Masa & P subsequently obtained interstate motor carrier authority pursuant to USDOT 3729825/MC-1325124 on or about February 1, 2023, but which would have been after the Accident.

pursuant to the Spirt-Masa Agreement.

19. Spirit Logistics then tendered the Shipment to Diaz-Abad Trucking, which was accepted by Diaz-Abad Trucking.

20. Diaz-Abad Trucking assigned Mojena to be the driver for the Shipment.

21. Diaz-Abad Trucking/Mojena performed the Shipment utilizing a 2018 Freightliner, VIN: 3ALACWFC6JDJH5183, which was rented from Penske Truck Leasing Company and garaged at the Lowe's facility (the "Subject Vehicle").

22. Diaz-Abad Trucking driver, Mojena, loaded the Subject Vehicle and began driving to complete the Shipment.

23. The Shipment originated in Florida and was destined for a consumer's home in Florida.

24. Mojena never left the geographical boundaries of the State of Florida in connection with the Shipment.

25. While in the process of completing the Shipment on August 18, 2022, while driving on U.S. Highway 17 in Putnam County, Florida, Mojena was involved in a motor vehicle accident with Daniel Jaramillo Vazquez (the "Accident"), who was pronounced deceased at UF Shands Hospital following the Accident.

## THE UNDERLYING LITIGATION

26. As a result of the Accident, a Complaint has been filed in the Circuit Court of the Seventh Judicial Circuit in and for Putnam County, Florida Case No. 2023 CA 159, entitled *Jesus Vazquez, as Personal Representative of the Estate of Daniel Jaramillo Vazquez, Deceased, v. George Proenza Mojena, et. al.*, wherein the Estate seeks

damages for the wrongful death of Daniel Jaramillo Vazquez ("the Underlying Litigation"). A copy of the Complaint is attached hereto as Exhibit "B" and incorporated by reference herein.

27. The Complaint asserts that Mojena negligently operated a 2018 truck with the consent of Lowe's, Spirit Logistics, Masa & P and Diaz-Abad Trucking.

28. In response thereto, the Complaint sets forth a negligence claim against Mojena and a vicarious liability claim against Lowe's, Spirit Logistics, Masa & P, and Diaz-Abad Trucking.

29. Progressive is defending Masa & P, Lowe's, Mojena, Diaz-Abad Trucking, and Spirit Logistics in the Underlying Litigation pursuant to a Reservations of Rights.

## THE PROGRESSIVE POLICY

30. Progressive issued, to Masa & P Logistics, Inc., a Commercial Auto Policy, under Policy No. 956419625, for the policy period from March 4, 2022 to March 4, 2023 ("the Commercial Auto Policy"), a copy of which is attached hereto as Exhibit "C" and incorporated by reference herein.

31. The Commercial Auto Policy described one vehicle, a 2007 International 4000, VIN: 1HTMMAAM87H363013, and listed one rated driver, Vladimir Morales Reyes.

32. The Commercial Auto Policy provided in pertinent part as follows:

### DUTIES IN CASE OF A LOSS

For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

You or the person seeking coverage must also obtain and provide us the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

***

A person seeking coverage must:
1. Cooperate with us in any matter concerning a claim or lawsuit ;
2. Provide any written proof of loss we may reasonably require;
3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;

***

10. authorize us access to your business or personal records as often as we may reasonably require.

## GENERAL DEFINITIONS
***

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

***

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

***

If you add any coverage, increase your limits or make any other changes to this policy during the 30 day period after you acquire an additional auto, these changes to your policy will not become effective until after you ask us to add the coverage, increase your limits or make such changes for the additional auto. We may charge premium for the additional auto from the date you acquire the auto.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will

provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

\*\*\*

c.  Any replacement auto on the date you become the owner if:
    (i) you acquire the auto during the policy period shown on the declarations page;
    (ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced au-to or due to mechanical breakdown of, deterioration of, or loss to the re-placed auto that renders it permanently inoperable….

\*\*\*

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

\*\*\*

20. **"We"**, **"us"** and **"our"** mean the company providing this insurance as shown on the declarations page

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

\*\*\*

### PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT - LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I - Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.

2. Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:
   (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
   (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.
   (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
   For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically describe on the **declarations page**.
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others

B. When used in Part I - Liability To Others, insured auto also includes:

\*\*\*

3. Any **temporary substitute auto;**

**LIMIT OF LIABILITY**

**1. Coverage Required by Filings**

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency; and
(i)     **We** are required to pay any judgment entered against **you**; or
(ii)    **We** agree to settle a claim or lawsuit;
For **bodily injury, property damage,** or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

33.    Spirit Logistics was listed on an Additional insured endorsement to the

Commercial Auto Policy (Form 1198), which provided as follows:

> This endorsement modifies insurance provided under the commercial auto policy and any endorsements thereto affording liability coverage.
>
> The person or organization named above is an **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to said **insured** only as a person liable for the conduct of another **insured** and then only to the extent of that liability. **We** also agree with **you** that insurance provided by this endorsement will be primary for any power unit specifically described on the **Declarations Page** and showing liability coverage.

34. In addition to the Commercial Auto Policy, Progressive issued to Masa & P an MCS90 Endorsement which contained the following federally regulated and mandated language:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules of regulations of the Federal Motor Carrier Safety Administration (FMCSA).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance is afforded, for public liability, does not apply to injury or to death of the insurance employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed to that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability here and described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and company. The insured agrees to reimburse the company for any payment made by the company on account of any claim, or suit involving A breach of terms of this policy, and for any

payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

35. The Commercial Auto Policy was not endorsed with and did not contain a Form E, Uniform Bodily Injury and Property Damage Liability, endorsement or similar endorsement certifying the policy as meeting any financial responsibility requirements set by the State of Florida for intrastate motor carrier operations.

## **COUNT I - ALL DEFENDANTS**

36. Progressive incorporates the allegations made in paragraphs 1–35 as though hereby set forth.

37. There exists a present, ascertained, or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of Progressive under the Commercial Auto Policy.

38. The rights and obligations of Progressive under the Commercial Auto Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Commercial Auto Policy.

39. Progressive and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described herein.

40. All proper and present and antagonistic interests are before the court by proper process.

41. Progressive is in doubt with respect to its rights under the Commercial Auto Policy and by this complaint seeks a declaration of its rights and obligations under the Commercial Auto Policy with respect to the claims asserted against

Progressive.

42. Pursuant to the provisions of Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, this court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances.

43. The Commercial Auto Policy does not provide liability coverage in connection with the Accident or in connection with the claims alleged in the Underlying Litigation insofar as the "2018 Freightliner" and/or the Subject Vehicle does not meet the definition of an "insured auto" as it was not specifically described on the declarations page, nor does it meet the definition of an "additional auto," a "replacement auto," or a "temporary substitute auto."

44. The Commercial Auto Policy does not provide liability coverage in connection with the Accident or in connection with the claims alleged in the Underlying Litigation insofar as the Accident did arise out of the ownership, maintenance, or use an "insured auto."

45. No individual or entity, including but not limited to Masa & P, Lowe's, Spirit Logistics, Diaz-Abad Trucking, and/or Mojena, qualify as an "insured" under the Commercial Auto Policy in relation to the Accident because the Subject Vehicle does not qualify as an "insured auto."

46. Progressive, therefore, has no duty to defend or indemnify any individual or entity, including but not limited to Masa & P, Lowe's, Spirit Logistics, Diaz-Abad Trucking or Mojena, for any claims arising from or relating to the Accident, including

but not limited to those alleged in the Underlying Litigation because the Accident did not involve an "insured auto".

47. Progressive, therefore, has no duty to defend or indemnify any individual or entity, including but not limited to Masa & P, Lowe's, Spirit Logistics, Diaz-Abad Trucking, or Mojena, because no individual or entity qualifies as an "insured" under the Commercial Auto Policy in connection with the Accident.

48. Progressive has no duty under the MCS90 endorsement on the Commercial Auto Policy to defend any individual or entity against claims arising from or relating to the Accident , including but not limited to those alleged in the Underlying Litigation, because under the applicable federal regulations and case authorities interpreting the same the MCS90 endorsement does not create any duty upon the insurer to defend.

49. Progressive has no indemnification/surety obligation under the MCS90 endorsement on the Commercial Auto Policy in relation to the Accident and the claims alleged in the Underlying Litigation because Masa & P was not operating as a for-hire motor carrier transporting property belonging to another in interstate commerce at the time of the Accident insofar as any transportation being performed was wholly intrastate and confined within the geographical boundaries of the State of Florida.

50. Progressive has no indemnification/surety obligation under the MCS90 endorsement on the Commercial Auto Policy in relation to the Accident and the claims alleged in the Underlying Litigation because Masa & P was not operating as a

for-hire motor carrier transporting property belonging to another in interstate commerce at the time of the Accident insofar as any transportation being performed at the time of the Accident was pursuant to the separate and independent motor carrier authority of Abad-Diaz Trucking.

51. Progressive has no indemnification/surety obligation under the MCS90 endorsement on the Commercial Auto Policy because liability insurance issued in the name of Diaz-Abad Trucking extends liability coverage to Masa & P in an amount equal to or exceeding the federal financial responsibility requirements.

52. Alternatively, to the extent the MCS90 endorsement on the Commercial Auto Policy is implicated in connection with the Accident or the Underlying Litigation, which Progressive denies for the reasons aforesaid, Progressive has no indemnification/surety obligations under the MCS90 endorsement on the Commercial Auto Policy with respect to the claims alleged against any individual or entity other than Masa & P because any surety obligation under the endorsement, to the extent one exists, extends only to a final judgment obtained against the motor carrier listed on the face of the MCS90 endorsement.

WHEREFORE, for each of the foregoing reasons, Progressive respectfully requests this Court to enter a declaratory judgment concerning the Commercial Auto Policy, and to declare the existence or non-existence of any immunity, power, privilege or right, or any other fact upon which the existence or nonexistence of such immunity, power, privilege or right may depend, including the following:

a. That the Commercial Auto Policy does not provide liability coverage for any

losses sustained in connection with the Accident, including but not limited to those alleged in the Underlying Litigation;

b. That Progressive has no duty under the Commercial Auto Policy to defend any individual or entity, including but not limited to Masa & P, Lowe's, Spirit Logistics, Diaz-Abad Trucking or Mojena, for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Litigation;

c. That Progressive has no duty under the Commercial Auto Policy to indemnify any individual or entity, including but not limited to Masa & P, Lowe's, Spirit Logistics, Diaz-Abad Trucking or Mojena, for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Litigation;

d. Progressive has no duty under the MCS90 endorsement on the Commercial Auto Policy to defend any individual or entity against claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Litigation;

e. Progressive has no duty under the MCS90 endorsement on the Commercial Auto Policy to indemnify or otherwise satisfy any final judgment entered in connection with the Accident, including but not limited to any judgment entered in connection with the Underlying Litigation;

f. Alternatively, to the extent Progressive has any obligation under the MCS90 endorsement on the Commercial Auto Policy to satisfy any final judgment

entered in connection with the Accident, such obligation only extends with respect to a judgment entered against Masa & P and then only to the extent of the federal financial responsibility requirements; and

g. Such other relief as the Court may deem just and proper.

DATED: November 30, 2023

/s/ *Jessalea M. Shettle*
Jessalea M. Shettle, Esq.
Florida Bar No. 127614
FREEMAN, GOLDIS & CASH, P.A.
9600 Koger Blvd N, Ste 103
St Petersburg, FL 33702
Post Office Box 12349
St. Petersburg, FL 33733-2349
Tel:   727-327-2258
Fax:   727-362-1987
jessalea.shettle@fgclawfirm.com
crystal.siegel@fgclawfirm.com

*Attorneys for Plaintiff, Progressive Express Insurance Company*